UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

ATIQ BUTT,

              Defendant.

18-CR-00087 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Defendant Atiq Butt ("Defendant") was indicted on February 5, 2018 for six counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* ECF No. 6.) Presently before the Court is Defendant's motion to suppress Defendant's statements that were made on December 13, 2018 during the execution of a search warrant at his home, and suppress all evidence obtained pursuant to that warrant, or alternatively, for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to ascertain whether such evidence should be suppressed ("Defendant's Motion"). For the following reason, Defendant's Motion is GRANTED in part and DENIED in part.

## ALLEGED FACTS

    The facts summarized herein are taken from the Indictment and the affidavits and exhibits submitted in support of Defendant's Motion, including the affidavit in support of the December 13, 2017 search warrant (the "Search Warrant").

    Two days before the execution of the Search Warrant, Defendant was visited at his home by several federal agents who asked him and his common law wife, Willowmenia Costa ("Ms. Costa") questions regarding Ms. Costa's brother, Andrew MacElhinney ("A. MacElhinney"), a New York City police officer. (*See* Defendant's Brief in Support of his Motion ("Def. Br.")

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10 | 1 | 2018

(ECF No. 31) at 1-2.)  Specifically, Defendant and Costa contend that the federal agents inquired into whether they had ever asked A. MacElhinney for favors.

Separately, the federal agents interviewed Costa's other brother, N. MacElhinney.[1] Following that interview, Agent Kristen Schill of the Federal Bureau of Investigation ("FBI") completed an affidavit in support of the application for the Search Warrant (the "Affidavit").  In that Affidavit, Schill affirms that she and other officers met with Witness-1 on December 11, 2017 and also spoke with him via telephone the following day.  (*See* Abate Aff., Ex. C ¶7(a).)

Based on those conversations, Schill affirms that Witness-1 interacted with Defendant on a regular basis, visited his house often, and was aware that Defendant was in possession of several firearms (such firearms are delineated in the affidavit).  (*Id.* ¶7(a)-(c).)  Specifically, she affirmed that approximately one year earlier, Witness-1 had purchased two firearms at Defendant's request, that Defendant chose and paid for the firearms, and that the firearms were an AR-15 and a 0.22 caliber AR-15.  (*Id.*)  Witness-1 also purportedly told Schill that he understood Defendant was asking him to purchase the firearms because Defendant had been "in criminal trouble in the past."  (*Id.*)  Additionally, Schill affirms that Witness-1 has seen Defendant in possession of two pistols with the serial numbers scratched off.[2]  Finally, Schill affirms that Witness-1 informed her that he assisted Defendant in building a gun safe on the subject premises.[3]

By way of a sworn affidavit, Ms. Costa contends that Witness-1 referred to in the Affidavit is her brother, N. MacElhinney.  (*See* Affidavit of Willowmenia Costa ("Costa Aff.")

---

[1] The Affidavit and the Government's papers in support of this motion refer to N. MacElhinney as Witness-1.  (*See* Declaration of Camille M. Abate in Support of Defendant's Motion ("Abate Aff.") (ECF No. 32), Ex. C; Government's Brief in Opposition to Defendant's Motion ("Gov't Br.") (ECF No. 35) at 2.)

[2] No pistols were recovered as a result of the execution of the Search Warrant.

[3] Schill provided additional information in the Affidavit to support a finding of probable cause.  In light of the Government's concession, as detailed *infra* I, that the challenged statements are material to the probable cause determination, the Court declines to detail the remaining facts therein.

(ECF No. 34).) Ms. Costa contends that she has since spoken to N. MacElhinney regarding the statements contained in the Affidavit and that he has denied making such statements to law enforcement, or even speaking with federal agents about Defendant at all. (*Id.* ¶¶1-3.) Indeed, Ms. Costa contends that N. MacElhinney informed her that the only person he spoke to federal agents about was their brother, A. MacElhinney. (*Id.*)

Additionally, Defendant contends that the alleged telephone conversation between federal agents and N. MacElhinney which occurred on December 12, 2017, was under a minute long, proving insufficient time in which to discuss the plethora of information obtained in the Affidavit about Defendant. (*See* Def. Br. at 4.) Since Defendant's arrest, N. MacElhinney was arrested and is currently out on bond related to a federal criminal complaint. (*Id.*) Defendant's counsel has made attempts to contact N. MacElhinney's attorney in an effort to confirm the information provided by Ms. Costa, but has been unsuccessful in so doing. (*Id.*) Consequently, she contends that N. MacElhinney should be subpoenaed to testify so that the Court can ascertain whether the statements made in the Affidavit are, in fact, knowingly or intentionally false. (*Id.*)

On December 13, 2017, federal agents executed the Search Warrant at Defendant's home. Defendant contends that he and Ms. Costa were preparing dinner when they heard a knock at the door. (*See* Def. Br. at 2.) Defendant let the federal agents enter his home, but contends that he informed them he wanted to speak with his attorney. (*See* Affidavit of Defendant ("Def. Aff.") (ECF No. 33) ¶3.) According to Defendant, the agents immediately proceeded down the stairs into his basement, and he was not given the chance to call his attorney. (*Id.* ¶¶4-5.) He thereafter contends that he was ordered to sit on the couch in the living room, away from Ms. Costa, and was told not to move. (*Id.* ¶5.) He was surrounded by six agents and officers. (*Id.*) Defendant maintains that he did not voluntarily sit down, was not free

to leave the couch – let alone the premises, and believed he was in custody. (*Id.*) During the time he was in the living room, Defendant contends that he was questioned by the officers and made several statements, but was not informed that he "had the right to remain silent and refuse to answer questions, nor that [he] had the right to an attorney before being asked questions." (*Id.* ¶¶6-8.) Defendant further asserts that he was in this position for approximately three hours while the agents and officers yelled at him and repeatedly "grilled" him about guns and handguns. (*Id.* ¶7.)

The Government contends that Defendant's account of the manner in which the Search Warrant was executed is entirely false. (*See* Gov't Br. at 10.) The Government asserts that agents arrived at Defendant's home and asked if they would be permitted inside to ask additional questions following the interview earlier that week. (*Id.* at 3.) After they were let into the home, the agents spoke with Defendant and Ms. Costa in their living room until other law enforcement officers arrived with the Search Warrant. (*Id.*) At that moment, the agents informed Defendant that they had a warrant to search the residence for firearms and they asked if there were any guns in the home. (*Id.*) Defendant informed them that there were, that he was accustomed to shooting firearms in his yard, and directed the agents to the basement where such guns could be found. (*Id.*) While the agents were searching the rest of the home, the Government contends that Defendant responded to an agent's exclamation that a bulletproof vest was recovered, apparently questioning why he was not allowed to have a bulletproof vest. (*Id.*) After the agents performed a thorough search of the residence, they placed Defendant under arrest, advised him of his *Miranda* rights and had him sign an advice of rights form "FD-395." (*Id.* at 4.) In executing the Search Warrant, the agents recovered several firearms, ammunition, and the bulletproof vest from Defendant's home.

Defendant now moves to suppress the firearms, ammunition, and bulletproof vest on the ground that the statements allegedly attributed to N. MacElhinney in the Affidavit were fabricated by Schill. (*See* Def. Br. at 8-9.) Defendant also seeks suppression of several statements he made to law enforcement officers during the execution of the Search Warrant on the ground that he was in custody for *Miranda* purposes but was not advised of his rights before he was interrogated and before he made the subject statements. (*Id.* at 5-6.) Defendant also contends that the statements were obtained in violation of his Sixth Amendment right to counsel, as he allegedly informed agents that he wanted to speak with his attorney as soon as they arrived, but was denied such a request. (*Id.* at 7-8.) In the alternative, Defendant seeks a *Franks* hearing.

## DISCUSSION

### I.     Motion for Franks Hearing

Defendant seeks suppression of the various firearms, ammunition, and bullet proof vests that were obtained attendant to the execution of the Search Warrant at his home. (*See* Def. Br. at 8.) The Government contends that Defendant has failed to meet the heavy burden required for entitlement to a *Franks* hearing and therefore opposes the request for such hearing and suppression. (*See* Gov't Br. at 6-10.)

"There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant. *Franks*, 438 U.S. at 171. "[A] defendant[, however,] may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). To be entitled to a *Franks* hearing, the proponent's position must be "more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*

The defendant "must make a 'substantial preliminary showing' that a false statement was

made in the search warrant affidavit either 'knowingly and intentionally' or with 'reckless disregard for the truth,' and that 'the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Mandell*, 710 F. Supp. 2d 368, 372 (S.D.N.Y. 2010) (quoting *Franks*, 438 U.S. at 155-56). "A misrepresentation or omission is intentional when 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" *Awadallah*, 349 F.3d at 64 (quoting *United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000)). To meet this standard, a defendant must support his allegations of deliberate falsehood with "an offer of proof." *United States v. Cook*, 348 F. Supp. 2d 22, 29 (S.D.N.Y. 2004) (quoting *Franks*, 438 U.S. at 171). Materiality rests on a determination of whether the "alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." *Id.*

Typically, to ascertain materiality, a Court should: (1) "disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant"; and (2) uphold the search warrant if "the corrected affidavit supports probable cause." *Awadallah*, 349 F.3d at 65 (quoting *Canfield*, 212 F.3d at 718). As the Government concedes that the alleged fabrications articulated by Defendant are material to the search warrant affidavit, (*see* Gov't Br. at 9 n.4), the Court need only assess whether Defendant has demonstrated a substantial showing that the challenged statements were made knowingly or intentionally or with reckless disregard for the truth.

It is important to note that the import of a *Franks* hearing is to "test the veracity of the affiant's statements." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). Here, Defendant contends that the statements contained in the Affidavit were knowingly and intentionally false because the witness, Ms. Costa's brother, informed Ms. Costa that when he spoke with federal

agents, he provided no information regarding the Defendant or his purchase, possession, or use of firearms.  (*See* Costa Aff. ¶2.)  Ms. Costa contends that her brother, N. MacElhinney only spoke to the agents about their brother, A. MacElhinney, who works for the NYPD.  (*Id.* ¶3.)  Moreover, Defense counsel contends that she has made efforts to contact N. MacElhinney's attorney in an effort to confirm this position, but has been unable to do so.  (*See* Def. Br. at 4.)  Consequently, the only way to confirm this information is by way of N. MacElhinney's testimony.

As required by *Franks* and its progeny, it appears clear that the Defendant has provided an "offer of proof" necessary to overcome any conclusory support for the application – *to wit*, Ms. Costa's affidavit that N. MacElhinney denies ever making the statements contained in the Affidavit and that testimony, under oath, by N. MacElhinney would prove as much.  In the absence of such testimony, the Court is unable to ascertain whether or not the statements contained in the affidavit are false.  Contrary to the Government's contention, Defendant's position is not conclusory or unsupported.[4]  Defendant's application for a *Franks* hearing is granted.

## II.  <u>Suppression of Defendant's Statements</u>

Defendant also seeks suppression of various statements he made to law enforcement during the execution of the Search Warrant.  (*See* Def. Br. at 5-7.)  Predominantly, Defendant argues that during the execution of the Search Warrant, he was "in custody" such that the agents should have read him his *Miranda* rights, before interrogating him.  (*Id.*)  He maintains that no such warnings were given to him, and therefore any statements he made to the agents should be

---

[4] The Government's contention that N. MacElhinney's attorney informed that N. MacElhinney would avail himself of his Fifth Amendment right to remain silent if called to testify does not persuade this Court against holding a *Franks* hearing.  N. MacElhinney should be called to testify so this Court can ascertain whether Defendant can prove by a preponderance of the evidence that the factual allegations in the affidavit were knowingly or intentionally false.

suppressed. (*Id.*) The Government contends that the assertions contained in Defendant's affidavit in support of this position are untrue, but nevertheless explicitly requests that this Court set an evidentiary hearing on the issue. (*See* Gov't Br. at 10-14.)

In *Miranda v. Arizona*, the Supreme Court held that "police may not interrogate a suspect who has been taken into custody without first warning the person 'that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford and attorney one will be appointed for him prior to any questioning if he so desires." *United States v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004). "Custody for *Miranda* purposes is not coterminous with . . . the colloquial understanding of custody." *United States v. Faux*, 828 F.3d 130, 134 (2d Cir. 2016) (quoting *United States v. FNU LNU*, 653 F.3d 144 (2d Cir. 2011)) (internal quotations and alterations omitted). To make such a determination "a court looks at all of the surrounding circumstances" to ascertain "how a reasonable man in the suspect's position would have understood the situation." *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420 (1984)).

In light of the Government's request for an evidentiary hearing on this issue the Court need not assess the merits of Defendant's position at this time. Indeed, the Court would be unable to undertake such an analysis in light of the fact that the Defendant and Government's version of events related to the execution of the Search Warrant and circumstances under which Defendant made the statements in question are completely at odds.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED in part and DENIED in part. It is denied insofar as it seeks suppression at this time. It is granted insofar as Defendant seeks a *Franks* hearing regarding the statements that formed the basis of the Search Warrant

application and an evidentiary hearing regarding the statements he made to law enforcement during the execution of that Search Warrant. Accordingly, the parties are directed to appear on October 4, 2018 at 10:00 am for the purposes of scheduling a joint *Franks* hearing and evidentiary hearing on the issues central to this motion. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 30.

Dated:   October 1, 2018
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge